Hiram T. Horton v. Commissioner.
Horton v. Commissioner
Docket Nos. 4206, 8534.
United States Tax Court
1946 Tax Ct. Memo LEXIS 154; 5 T.C.M. (CCH) 526; T.C.M. (RIA) 46147; June 26, 1946
*154 Dana Latham, Esq. and Austin H. Peck, Jr., Esq., 1112 Title Guarantee Bldg., 411 West Fifth St., Los Angeles 13, Calif., for the petitioner. B. M. Coon, Esq., for the respondent. HARLAN
Memorandum Findings of Fact and Opinion HARLAN, Judge: This matter is before this court to procure redetermination of deficiencies declared by the Commissioner for the years 1940 and 1941 in the respective amounts of $8,571,16 and $4,022.64. The deficiencies were occasioned by the refusal of the Commissioner to permit the taxpayer to deduct percentages of net profit paid by the taxpayer to the owner of a mining concession in Mexico which was being operated during those years by the taxpayer. Question Involved Whether payments of sixty percent of net profits from the operation of a Mexican mining property during 1940 and 1941 by petitioner to the grantor of petitioner's mining privilege were deductible operational expenditures as claimed by the petitioner, or were payments on the purchase price for the mining privilege, thereby being capital expenditures and non-deductible as claimed by the respondent. Findings of Fact Petitioner is an individual American citizen whose address *155 is 314 Loring Avenue, Los Angeles, California. During the years involved his income tax returns were filed with the collector of internal revenue for the sixth district of California. At some time prior to August 20, 1937, one Fred R. Lee procured from the Mexican government a concession for an indeterminate period of time to conduct mining operations on a certain mining lot in Mexico known as "El Fenomeno." On August 20, 1937, petitioner and the said Fred R. Lee acknowledged before a duly authorized official in Mexico the entering into of a contract in the nature of a lease where the said Fred R. Lee granted to the taxpayer the privilege of developing the mining property then under concession to the said Fred R. Lee for a period of nine years. Among the terms of this contract it was provided that the taxpayer herein should supply all of the necessary mining equipment and installation but that in turn all of the profits arising from the mining operations should be paid to the taxpayer herein until he was fully compensated for his initial outlay, whereupon the net profits of the mining operations were to be divided between the taxpayer and the said Lee in the ratio of forty percent *156 to the taxpayer and sixty percent to the said Lee until the said Lee had been repaid an amount equal to one half of the initial outlay for equipment and installation and when the said Lee had been thus compensated for his advancement for the equipment and installations, then the net profits were to be divided between the two men on an equal basis, fifty percent to each. During the years 1940 and 1941 the taxpayer paid sixty percent of the net profits to Lee and retained forty percent to himself. He deducted from his gross income these payments of sixty percent as operational expenses of the mine. In Mexico the government owns all minerals or substances that compose the subsoil. Under Mexican law concessions are granted to foreigners to operate the extraction of minerals provided the alien agrees in advance not to appeal to his native government for the protection of his rights in said concession and also provided that the Mexican government can at any time cancel the concession if the concessionaire does not engage in operations according to the terms of his concession or if the concessionaire does not pay his legally imposed tax on the minerals when removed from the mine. The *157 concessionaire is granted the privilege of transferring his rights under the concession or any portion thereof to other individuals who are subject to the same restrictions and conditions as are imposed upon the original concessionaire. Opinion Prior to April 22, 1946, the law controlling the nature of payments such as are involved herein, whether they are to be considered as capital payments or as operational expenses, was decidedly involved and unsettled. However, on that date the Supreme Court of the United States decided the case of , which case, in its essential facts, is on all-fours with the case at bar. It decided that payments made by a lessee to a lessor, constituting a proportion of the profits from mining operations, were operational expenditures and not capital investments and therefore the principal issue involved in this case is determined in favor of the petitioner. However, only fifty percent of the net profits paid by the taxpayer to Lee during the taxable years was for the privilege of operating the mine. The remaining ten percent of the profits was to reimburse Lee for the fifty percent of *158 the installation costs which Lee had advanced by foregoing his share of the profits at the beginning of the mining operations. It is therefore held that as to this ten percent the payments are capital expenditures. Judgment will be entered under Rule 50.